Appellant's claim covers a new configuration for a filter and a catalytic converter device used for the exhaust of a gas engine. A single reference, Michelin, is cited against the claim and the overall question here is whether it would have been obvious to modify Michelin to achieve the claimed new configuration. The claimed configuration places a connection means in the housing of the device so that the connection means overlies the internal filter. This is in contrast to the Michelin reference which shows the connection means overlying empty space. Marc is familiar with the Michelin reference and essentially begins and ends his specification by discussing the Michelin reference and by noting that he had a very specific reason for modifying the Michelin reference. Specifically, Marc modified the Michelin reference and claimed to achieve a new configuration that allows the shortening of the device in a way that wasn't possible with the prior Michelin configuration. The Michelin configuration actually showed two different connection means, 64 and 66, and one of them does overlap. I understand it's not the one that connects the catalyst to the filter, so why isn't that a disclosure which would render obvious the notion that the other connection means could be placed in such a manner as to overlap? Michelin does indeed show two locations. It is our position that neither of those locations shows the overlap of the connection means overlapping the filter. Not overlapping the filter, I agree, but the other connection means, 66, doesn't overlap the filter, I see. What about when you look at Michelin figure 4D, that isn't showing the connection means 218 overlapping filter 20 at all? Filter 20 is broadly defined and it seems to me goes all the way to the point which would amount to the center of the connection means on a vertical axis. So, I don't see how you can conclude that connection means isn't overlapping at least a small part of the filter. It may be overlapping a very small part. I don't believe it shows that the center of the connection means is overlapping the filter. Do you claim that the center of the connection means must overlap the filter or that the connection means must overlap the filter? We claim that the connection means must overlap the filter. So, this shows a connection means that ever so slightly overlaps the filter. Now, I understand it's not the same connection means because this isn't the one that connects the catalyst to the filter, but with a reference that shows a connection means connecting a catalyst and a filter, and then shows another connection means at the other end of the filter which does overlap the filter. It seems like such a small thing to say why not redo the other connection means so it likewise overlaps. I would note that the patent office initially issued a 102 rejection and withdrew that rejection based on the argument that the connection means does not overlap the filter. Great, but it seems like such a small leap, so that's why they chose obviousness. I'm wondering why isn't that such a small difference between Michelin and your claims such that it would be obvious? The patent office in discussing obvious did not and specifically refused and declined to identify any particular reasons why one would modify Michelin to achieve the claim new configuration and instead focused on a certain functionality test. The board focused on particular language that appears in KSR and Secreta. KSR quoting the previous Supreme Court case Secreta for the quote, when a claim is to a combination that simply arranges old elements with each performing the same function it had been known to perform and yields no more than one would expect from such an arrangement, the claim is obvious. It is our position that this sentence is a two-part inquiry and that the board addressed only the first part. Specifically, the board found that the connection means in the new arrangement retains its prior function in that it serves as a connection means in the new arrangement just as it had in the old arrangement, but specifically did not find anything regarding the second part of that inquiry, which was whether or not the new arrangement results in anything new and unexpected. Does the common sense doctrine, if I can call it that, coming out of KSR have any play here? That is to say, I've listened to your discussion with Judge Moore about the fact that the Michelin reference does show one overlap. Would it have been a matter of common sense to make another one? Certainly, KSR does allow common sense to serve as a rationale or a reason, an articulated reason, why one would make a modification. I was just re-reading our perfect web case where the common sense doctrine was allowed to find obvious, a complete step in a claim that had been not involved in the reference. But I think in this case, the board did not identify anything to which common sense would apply. It didn't identify a known problem. It didn't identify a known technique that you would apply common sense to solve a particularly known problem. Shortenability or the problem of shortening or the problem of length or any technique by which anything, particularly a catalytic converter unit might be shortened, none of those are identified in Michelin or identified by the board. And the board made no foundings with respect to what problem might be solved, what techniques one might use to solve that. So I would suggest that there is nothing to which common sense rationale would even apply. Well, the board found that there was no unexpected result. It was all predictable. The modifications, whatever modifications existed, were entirely predictable. It was a matter of common sense. What's wrong with that? I think the board's finding was narrower than that in that the board found that the connection means in the new configuration retains its prior art function, predictably retains its prior art function. But it specifically declined to find and made no findings regarding what other new functions or new unexpected results might be yielded from the new configuration. And that question is specifically required by the particular Secreta slash KSR quote that the board's decision relies upon. The board relied on the examiner's finding that the rearrangement would have absolutely no effect on the operation of the device. And do you contest that fact? I do, Your Honor. I believe that the new configuration is, after all, a new configuration. But it would have an effect on the operation of the device. It would allow the shortenability of the device. That's not the operation. That's the size. It potentially can affect the operation. It affects the operability of the device and the uses to which the device could be used. But the board made this determination, and it's a fact-finding. And so we have to give deference to it. We don't get to look at it de novo. It has to be given substantial evidence deference. And so you're saying, I think it could be something different, isn't going to be anywhere near enough to get over that hurdle. Is there any evidence, is there anything else you could give us that would overcome or give us grounds to overturn that fact-finding? Well, I would suggest that the actual fact-finding of the board was that the connection means of the new arrangement retains its prior function. And to the extent that it appears that the board found that the operation of the device does not change, in the very next sentence and in the paragraph after that, they're more clear in that they're talking about when they say that the operation of the device does not change. What they're talking about is the retention of the prior function of the connection. So the connection means retains the prior function. But even more than that, as to the question of whether or not the operability of the device changes, meaning even assuming that the board does find that the operation of the device changes, I wonder what sort of weight that would have in an obviousness context. Because we are not relying on the short ability of the device for non-obviousness. The device is non-obvious because it is a new device, and the Patent Office has not provided any reason by which one would modify the Michelin reference to achieve the new device. Suppose that you came up with a new device that had no benefits whatsoever, none. It was an ever-so-slight tweak on Michelin, smaller than this tweak, and it had no benefits whatsoever, and yet the Patent Office said, well, it's obvious that change has no benefits. Because you're saying we are not relying on the shortening of the device. So absent reliance on the shortening, your modification of the clamp is irrelevant because it doesn't change the operation of the device. You've made an open court statement. You're not relying on the shortening. So then there's no reason to make the change. There's no incentive. So does that mean patents should be granted for people that make absolutely minuscule changes to an existing in the prior art structure that serve no benefit and have no purpose? That seems to me is exactly what the doctrine of obviousness is meant to prevent. So I'd like to hear your thoughts on that. In this case, there was a very specific reason why the inventor made that change, and it was to allow the short ability. Are you really giving up the shortening? I mean, I think as Judge Moore understood what you'd said previously was that you were not relying on the shortening for non-obviousness. I thought it was the whole core of your case. What I mean to say is that just because short ability and a shorter device is not in the claim does not preclude the fact that there is no reason for one skilled in the art to make the necessary modification. Well, if that feature is not in the claim, why is that at all relevant to this analysis? It is only relevant because the particular sentence that the board relies on for obviousness in this case. Now, the board did not rely on the classic test of whether or not there was a suggestion or whether or not there was any rationale to make the modification. The board relied on this very idiosyncratic sentence appearing in Secreta and KSR. And the only reason that the short ability is relevant is because that sentence makes it relevant. The second part of this sentence that the board relies on asks whether or not the new arrangement gives rise to anything new or unexpected. And I would say... Maybe I'm a little daft, but I'm reading the board's opinion. The board says that you contend to them that the invention is unobvious because it permits shortening of the device. That's how the board understood your argument. I'm reading from the opinion that the claim location of the detachable connection means is unobvious because it permits shortening of the device. That is the reason why the applicant conceived of the device. And that is the reason why the particular KSR sentence could not apply in this case. And so that cannot serve as a signpost for obviousness. And I suggest that we should fall back on the traditional test for obviousness about whether or not there was a suggestion to make the modification. All right. Would you like to reserve the rest of your time? Yes, sir. All right. We'll hear from the solicitor's office. Thank you, Your Honor. Mr. Pickle, good morning. Good morning. Thank you. I think the court is aware of the issues in this appeal, and I have nothing further to add unless there are questions. Why did the board make the statement, and you echoed it in your brief, about focusing on them not having included the shortening in the claim? I assume when you make that statement, it almost seems like you're admitting that if the shortening had been in there, this would have been a different case. But I imagine if the shortening limitation had been in there, you would have been arguing to us that it's just inherent, that it makes no changes. It's inherent from the claim. Maybe an expected result, Your Honor, something predictable. If that were in the claim, the board might have said that. We think the board accurately noted, and what's in the claim counts the most, that this claim is very broad. It just has the detachable connection means moving from the Michelin device just a little to the left or a little to the right, and no shortening is required in the claim. No reducing space is required in the claim. The claim is very broad. It only differs by the mere rearrangement of parts, a mere design choice for the detachable connector that's near the filter or catalytic unit. So in our brief— Isn't the shortening the inherent result of taking a clamp and putting it around something as opposed to between something? No, it's not, Your Honor. Because since they don't reduce the space, a perfect example is their figure 2, which is opposite page 3 of our brief. Their claim relocates the connector but does nothing, nothing with the space in between 20 and 18. I'm specifically looking at mark figure 2, which is in our red brief, opposite page 3 of our red brief. I have it. Yes. They have a big space there, 22. Big 22. Yeah. So their device, you know, it might even be longer than Michelin's. It has quite a bit of space, so shortening by this applicant's own application does not necessarily happen. Their representative figure shows something with plenty of space in it. So the board was right on with if you don't have it in the claim, it's not—and you can amend your claim during prosecution. You can craft it more narrowly as to what you are now arguing or were arguing to the board. And the board, you know, we think very well handled their shortening argument by it's not in the claim. Maybe put it in the claim, but it's not in the claim. And their figure supports that quite clearly. If the court has no further questions, I'll take them. All right. Thank you very much. Thank you very much. Excuse me. Mr. Gearing, any brief comment in response to Mr. Piccolo's statement? Just a couple comments, Your Honor. We believe the test applied by the board is essentially a per se test. And that the test assumes at the outset that it cannot be invented to combine known elements where each element retains its prior art function. What do you mean per se test? Meaning that it leaves no room for an examination as to the motivation one would have to make the necessary modifications. And it leaves no room to assess whether or not the new invention gives rise to new and unexpected results. The board's decision was based on— Well, there's certainly nothing in KSR to that effect. Restricting the obviousness analysis so as not to consider motivation or unexpected results or anything of that sort. Yes, Your Honor. But I would suggest that to the extent that the functionality of the device, of the claimed device, is going to play a part in the obviousness determination, then that assessment of functionality should conform to the particular language in KSR. And in this instance, I think the board decided that the claimed connection— The functionality analysis just goes to the fact that the board was saying nothing's happening. I mean, nothing has happened to the Michelin reference. No change in the function. I mean, the short is that when KSR says, well, when the results are highly predictable and the arts are fairly simple, we're just going to presume that there was a motivation. That's basically what KSR says. But KSR also asks whether or not there are any new and unexpected results from the new arrangements, and the board specifically declined to address that question. I believe I'm out of time. All right. Thank you. Thank both counsel. The case is submitted. Next is—